UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PETITION OF RJF INTERNATIONAL CORPORATION FOR EXONERATION FROM OR LIMITATION OF LIABILITY, CIVIL AND MARITIME

C.A. NO. 01-588 S

# CLAIMANT'S REPLY MEMORANDUM IN RESPONSE TO PETITIONER'S OPPOSITION TO CLAIMANT'S MOTION TO APPROVE SETTLEMENT

Without any supporting citation, petitioner states that "this Court may not have jurisdiction to approve the funding of the supplemental needs trust and terms of the trust," and suggests that the "jurisdiction issue involving the funding of the trust should be resolved before the settlement is approved by this Honorable Court." Petitioner's Opposition to Claimant's Motion to Approve Settlement & Request for a Hearing, at 3. In fact, there is no jurisdictional issue, and no reason for this Court not to approve the settlement and order that it be implemented immediately.

There is no question that this Court has jurisdiction over both the subject matter of this admiralty proceeding and the parties involved. With traditional subject matter and *in personam* jurisdiction established, the only question is whether this Court has the authority to approve the settlement, including its specific terms. This question is easily answered. "A United States District Court has inherent power to supervise and aid the implementation of settlement agreements in pending litigation." Wood v. Virginia Hauling Co., 582 F.2d 423, 424 (4th Cir. 1975). This is especially true when the litigant is an incompetent, like Jamie. Stecyk v. Bell Helicopter Textron, Inc., 53 F.Supp. 2d 794, 796, (E.D. Pa. 1999) ("The Court has the authority to approve the settlement under its

inherent duty to protect the interests of minors and incompetents that come before it."); see Proposed Amendments to Local Rules, United States District Court for the District of Rhode Island, LR Cv 39.4(c). Authority to "supervise and aid the implementation of settlement agreements" and to "protect the interests of . . . incompetents" must, of course, include the authority to approve the specific terms of the settlement and to direct their implementation; otherwise, judicial review of a settlement would be meaningless. It simply makes no sense to suggest that this Court can approve the settlement generally, but lacks the power to authorize the disposition of the settlement proceeds and must defer to some probate court for that action.

Moreover, Jamie's status as a seaman makes him "a member of a favored class" and "a ward of admiralty," Isbrandsten Co. v. Johnson, 343 U.S. 779, 782-83 (1954) (quoting Warner v. Goltra, 293U.S. 155,162 (1934), and it is illogical to suggest that an admiralty court lacks the power to authorize a litigant to take all steps necessary in a settlement to protect the financial interests of a ward of admiralty.

That the establishment of a supplemental needs trust is part of this settlement does not require a different analysis. 42 U.S.C. §1396p(d)(4)(A) allows a supplemental needs trust to be "established for the benefit of [a disabled individual under age 65] by a parent, grandparent, legal guardian of the individual, or a court... ." The statute imposes no special requirements concerning the funding of the trust. Clearly, the authority to "establish" such a trust under the statute necessarily implies the authority to transfer the trust corpus to the trust.

Consequently, this Court has authority to approve the terms of the settlement and to authorize claimant and counsel to transfer the net settlement proceeds into Jamie's

supplemental needs trust. Petitioner's concerns are groundless, and its suggestion that additional probate court proceedings may be necessary is, in claimant's attorneys' experience, unprecedented. Claimant's counsel of record, her supplemental needs trust attorney, and the lawyer who will serve as co-trustee of the supplemental needs trust all have experience with personal injury settlements involving trusts, some of that experience extensive, and not one of them has ever encountered a settlement where the Court in which an action was pending approved a settlement trust, supplemental needs or otherwise, and the separate approval of a probate court had to be obtained before the trust could be funded. This Court's authority over this case and the parties involved in it clearly extends to approving this settlement, the mechanisms that have been chosen to implement it, and the proper disbursement of the settlement proceeds. Therefore, this Court should approve the settlement without any further proceedings or delay.

Part 3 of claimant's memorandum in support of her motion to approve settlement addresses the supplemental needs trust. Claimant incorrectly stated in that part that the trust provided for an investment trustee to manage the trust corpus. In fact, the trust requires that the trustees "retain the services of one or more professional investment advisors to advise the trustee regarding investment decisions." This investment advisor will not be a trustee.

Furthermore, at the time claimant's motion to approve settlement was filed, the trust provided that the trust remaindermen would be claimant and Jamie's sister Stacy (Paragraph 5.1). Petitioner's counsel objected that Jamie's natural father was not included as a remainderman. In response, claimant has agreed to include Jamie's father as a remainderman, and Paragraph 5.1 has been changed to reflect this inclusion.

In order to avoid any question about the terms of the trust that claimant asks this Court to approve, a copy of the final trust document submitted for approval is attached hereto as Exhibit A.

Finally, claimant did not anticipate that petitioner or its insurer would object to paying the costs for the services of the guardian *ad litem*. Claimant bore the entire cost of $3,950 to prepare the Medicare set aside arrangement proposal, something that petitioner insisted on to protect itself from any future Medicare reimbursement liability. Claimant has informed petitioner's counsel that the guardian *ad litem* estimates that his fee will be in the range of $1,500 to $2,500. Given that petitioner's insurer has had the use of $5.4 million for over 10 months since the settlement was reached, the resulting financial windfall clearly justifies placing the relatively small burden of the guardian's fees on petitioner or its insurer, not on Jamie.

Respectfully submitted,

CLAIMANT
KIMBERLY M. HANNA
By her Attorneys,

John S. Foley #2060
Decof & Decof, P.C.
One Smith Hill
Providence, RI 02903
Telephone: (401) 272-1110
Facsimile: (401) 351-6641

John W. Merting
(Pro hac vice)
Law Offices of John W. Merting, P.A.
Suite 39 – Harbourtown
913 Gulf Breeze Parkway
Gulf Breeze, FL 32561
Telephone: (850) 916-9645
Facsimile: (850) 916-9787

Andrew V. Buchsbaum
(Pro hac vice)
Friedman & James LLP
132 Nassau Street, Suite 900
New York, NY 10038
Telephone: (212) 233-9385
Facsimile: (212) 619-2340

## CERTIFICATION

I hereby certify that a true and accurate copy of the within document was sent by regular mail, postage prepaid, from Decof & Decof, P.C., One Smith Hill, Providence, RI 02903, to **Thomas Clinton, Esq. and Kenneth Chiarello, Esq.**, Clinton & Muzyka, P.C., One Washington Mall, Suite 1400, Boston, MA 02108; **Michael R. Hagopian, Esq.,** 212 Greenwich Avenue, Warwick, RI 02886; **Dennis J. Roberts II, Esq.** 40 Westminster Street, Suite 305, Providence, RI 02903; **Anthony DiGioia, Esq.**, Assistant U.S. Attorney, Fleet Center, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903; **Clifford Pierce, Esq.**, Assistant Regional Counsel, U.S. Department of Health and Human Services, 2250 John F. Kennedy Federal Building, Government Center, Boston, MA 02203, and **William A. Poore, Esq.**, Poore & Rosenbaum, Commerce Center, 30 Exchange Terrace, Providence, RI 02901-1117 on the 1st day of December, 2005.

Avery P116

DRAFT

# THE JAMES M. AVERY IRREVOCABLE (d)(4)(A) TRUST

This declaration of trust is made this ___ day of December, 2005, by Kimberly M. Hanna, of Buzzards Bay, Massachusetts, to benefit my son, James M. Avery, as Donor, with Kimberly M. Hanna, as "trustee"and Chris A. Milne, of Dover, Massachusetts, as "trustee" and from time to time as "independent trustee", hereinafter referred to as the "trustee".

## 1. THE TRUST FUND

1.1. Initial Funding.

The donor shall initially fund this trust with the assets of James M. Avery, which assets are described in Schedule "A" attached hereto. By execution hereof, on behalf of James M. Avery, I hereby assign, convey, transfer, and deliver the described assets to the trustee on the date hereof.

1.2. Additional funding.

The trustee may accept property from any source and upon any terms, but no property may be added, if the trustee believes it will not be in the best interest of James M. Avery.

1.3. Irrevocability.

The donor hereby relinquishes all power to alter, amend, or revoke any provisions of this trust agreement. This trust agreement shall be irrevocable. The trustee, however, may at any time, or from time to time, amend any administrative provisions of this trust by any instrument in writing signed and acknowledged by the trustee. For purposes of the foregoing, the term "administrative provision" refers to any provision of the trust dealing with the management and

administration of the trust and in no event shall any such amendment affect, enlarge or shift any beneficial interests created hereunder. In addition, the trustee may at any time, or from time to time, amend provisions of the trust to preserve the eligibility of James M. Avery for any public benefits or to enable James M. Avery to achieve eligibility for public benefits. In no event shall any such amendment affect, enlarge or shift any beneficial interests created hereunder unless specifically required by a public agency. In no event shall any such amendment change the obligations of the independent trustee without their consent. At least ten days prior to any such amendment being made to the trust, the trustee shall give written notice of the anticipated amendment by mailing a copy by first class mail to the legal department of the Massachusetts Division of Medical Assistance, or it successor.

1.4. Beneficiary.

This is a nonsupport, supplemental needs trust for the benefit of my son, James M. Avery, who may hereinafter be known as "James" hereunder. James was born on October 26, 1982, and is disabled as defined in section 1614(a)(3) of the Social Security Act, such disability evidenced by the Social Security Administration Notice of Change in Benefits attached hereto as Schedule B. I intend to create a trust that will qualify for the Medicaid exclusion under 42 U.S.C. §1396p(d)(4)(A). James is my son. In addition, I have been appointed James' guardian by the Okaloosa County, Probate Court in Florida.

1.5. Name of trust.

This trust may be designated The James M. Avery Irrevocable (d)(4)(A) Trust.

## 2. THE TRUST PURPOSE

2.1. Supplemental nature of trust.

The purpose of this trust is to supplement, but not to supplant, whatever benefits and services James may from time to time be eligible to receive by reason of age, disability, or other factors, from federal, state, and local governmental and charitable sources. I have entered into this trust on behalf of James with the recognition that governmental and charitable programs, in themselves, contain many gaps that, if unaddressed, will greatly reduce the possibility of James maintaining himself as independently as possible and having the capacity to meet his future needs for residential, personal, and other nonmedical services. It is, therefore, my intent and direction that the trustee use the principal and income of the trust to provide James with those benefits and services, and only those benefits and services, that, in the trustee's judgment, are not otherwise available to James from other sources as or when needed for his welfare. Without limiting the discretion of the trustee to take whatever actions it may consider necessary for James' welfare, in accordance with the trust purposes, I desire that the trust be used in ways that will best enable James to lead as normal, comfortable, and fulfilling a life as possible.

2.2. Authority to initiate proceedings for public benefits eligibility.

In determining whether the existence of this trust has the effect of rendering James ineligible for any program of public benefit, the trustee is hereby granted full and complete discretion to initiate action to render James eligible for any such program or public benefit, and is hereby granted full and complete discretion to initiate either administrative or judicial proceedings, or both, for the purpose of determining eligibility. All costs relating thereto,

including reasonable attorney fees, shall be charged to the trust. The trustee is directed to defend, at the expense of the trust, all contests or attacks of any nature against the trust.

2.3 Quality of Life.

It is my intention that the trust be used to maintain James in the most home-like, independent environment possible, to allow James to communicate to the greatest extent possible and to maximize his potential socially, emotionally and academically. By way of examples, and without limiting the trustee's discretion, the trustee may use trust principal and income to pay for any technology which will assist James in communicating and to purchase a residence for James and to make any necessary improvements or renovations to any homes where James is residing. Further, by way of example, the trustee shall use the trust to promote interaction between James and his family.

2.4. Level of Care.

In providing for James' care, the trustee, in consultation with the care committee as described in Section 3, shall spend as much of the net income and principal of the trust as it, in its sole and absolute discretion, shall deem necessary and reasonable under the circumstances then prevailing to enable James to receive care and medical treatment in the most home-like environment possible. In addition, as needed, the trustee will spend as much of the net income and principal as necessary to provide the maximum level of medical, nursing, rehabilitative, or comfort care for James, including:

(a) If James is hospitalized, the trustee shall have the discretion to seek a level of care for James beyond that which would ordinarily be provided in a hospital setting, including, if and when appropriate, in the sole and absolute discretion of the trustee, arranging for James to be

placed in a private room, or if available, in the more luxurious type of accommodations now offered by some hospitals, and by hiring registered or practical nurses, or other caregivers, as appropriate, on a part-time, full-time or 24-hour basis to supplement the regular level of hospital care.

(b) If James' medical condition is such that nursing care or medical equipment is required for his care, the trustee shall undertake all reasonable efforts to provide such care for him at his home, including the hiring of part-time, full-time or 24-hour nurses or other caregivers, the renting or purchasing of any medical equipment necessary for his care, and accommodating, by architectural changes if necessary, any physical needs James may have.

(c) The trustee is authorized to spend trust income and principal to provide personal aides, homemakers, bill payers, or other persons who may assist James in his daily living and otherwise enable him to reside in his home for as long as it is feasible to do so, taking into account James' safety.

(d) If James' condition is such that the care committee determines that his best interests will be served by James receiving care at a residential care facility, the trustee shall make every effort to select the facility which offers the highest quality of care and the most comfortable surroundings reasonably available, and shall personally monitor, or shall hire, at the expense of the trust, a care manager or other such qualified person who shall monitor, or supervise the monitoring of James' care, not less often than weekly. If the care committee, determines that James' comfort and well-being would be enhanced by the hiring of additional nursing personnel, or of a companion or other caregiver, the trustee shall have discretion to hire and shall actively direct such personnel in caring for James. The trustee may hire family members in this regard.

Family members shall be entitled to compensation equal to the customary and prevailing charges for services of a similar nature during the same period and in the same geographic locale.

(e) If James should ever require the services of an organization such as hospice, and if such organization cannot provide 24-hour, seven-day per week home care, then the trustee shall spend trust assets to hire supplemental nurses, nurses aides or other caregivers to work with the hospice professionals and provide services in their absence.

**3. CARE COMMITTEE**

(a) The care committee shall advise the trustee on the use of the trust funds for James' care and well being and to ensure that the trustee utilizes the trust funds in a manner consistent with the trust purpose as described above in Section 2. At present, the care committee is myself, Kimberly M. Hanna. If for any reason I am no longer able to serve on the care committee, I appoint, my cousin, Robert W. Munroe, of Shrewsbury, Massachusetts and my daughter, Stacy Marie Avery Hanna, of Mary Esther, Florida, to serve on the care committee. If I am not able to serve on the care committee, the committee shall always include at least two members, one of whom must be a licensed social worker with expertise and experience in working with disabled individuals and advocating on their behalf to obtain appropriate services and benefits. The social worker shall be chosen by the then serving members of the care committee.

(b) The care committee shall terminate upon James' death.

## 4. DURING JAMES' LIFE

### 4.1. Payments of Income and Principal for James

The trustee may make payments of income and principal to or on behalf of James, the making and the amount of any payment from the trust being totally and solely within the discretion of the trustee. The trustee's discretion, to make trust distributions is contingent upon the approval of the independent trustee as described in paragraph 6.3 below. Whenever the trustee has discretion to pay income or principal to a beneficiary, the trustee may make the payments at any time, in any amounts and proportions, and for any purposes as the trustee considers advisable. The trustee may take into account any factors it considers appropriate, having regard for the purposes of the trust described above in Section 2. Neither James nor any person acting on his behalf as guardian, conservator, guardian ad litem, attorney, or agent, shall have any right, power, or authority to liquidate the trust, in whole or in part, or to require payments from the trust for any purpose. This restriction does not bar any person acting in any such capacity from also serving as trustee hereunder and exercising all rights and powers of a trustee under this instrument. The trustee is directed to conserve and accumulate the trust estate to the extent feasible, due to the unforeseeability of James' future needs. However, accumulation or use of the trust is to be determined solely on the basis of the needs of James, without regard to the interests of the remaindermen.

## 5. AFTER JAMES' DEATH

5.1. Distribution upon death of James.

This trust shall terminate upon the death of James, at which time the trustee shall:

(a) Pay the trust property and undistributed income to the Commonwealth of Massachusetts and to any other state which has paid for James' care under the Medicaid program up to an amount equal to the total amount of medical assistance paid on behalf of James under the Medicaid program, to the extent such medical assistance has not already been reimbursed from any other source. Such payment or payments from the trust shall be apportioned among the Commonwealth of Massachusetts and other states in proportion to each state's share of the total medical assistance paid on behalf of James;

(b) Pay the remaining trust property and undistributed income as James may appoint by will as provided in paragraph 7.4 to any person or not-for-profit association; and

(c) Pay any remaining principal and undistributed income not so appointed, in equal shares to me, Kimberly M. Hanna, Jamie's sister, Stacy Marie Avery Hanna and Jamie's father, James Richard Avery III. If any of the beneficiaries do not survive James, the trustee shall pay that person's share to his or her issue by right of representation. If that person does not have then living issue, the trustee shall pay that person's share to the survivors.

5.2. Distribution if no beneficiary living.

If at any time no person is living who is eligible to receive property under the foregoing provisions of this trust, the trustee shall pay the remaining property to the persons who would be entitled to receive the property under the laws of Massachusetts then in force and in the

proportions prescribed by such laws as if James had then died intestate, a resident of Massachusetts, and not survived by a spouse.

5.3. Payments to persons under thirty or unable to manage their affairs.

If a person becomes entitled to any income or principal before reaching the age of thirty years, or while, in the trustee's opinion, a beneficiary is unable to manage his or her affairs because of physical condition or mental incapacity, whether or not he or she has any legal guardian or conservator: (a) the trustee may pay all or any part of the property to the person or use or distribute it for his or her benefit without liability to see to the application of the payment; and (b) if the trustee elects to set apart a separate trust, the trustee may accumulate or retain all or any part of the property or income therefrom in trust and later may pay it as provided in clause (a). When the person under the age of thirty years reaches that age, or when the trustee considers the incapacitated person to be able to manage his or her affairs, the trustee shall pay the remaining principal and undistributed income held for such person to the person. If a person for whom property is held in trust under clause (b) dies, the trustee shall pay the remaining trust property to the person's issue then living, per stirpes, or, if none, to the issue then living per stirpes of the person's parent, or if none, to the person's estate. This paragraph 5.3 shall not apply to James' interest in the trust during his life.

## 6. THE TRUSTEE

6.1. Appointment of trustee.

(a) At present, the trustees are myself and Chris A. Milne. If I am not living and legally competent, I appoint, Robert W. Munroe, as successor trustee to serve along with the independent trustee. If he is not living and legally competent, I appoint, Stacy Marie Avery

Hanna, to serve along with the independent trustee as successor trustee. The term "trustee" includes the original trustees and all successor or additional trustees.

(b) I may appoint successor and additional trustees, including the independent trustee and successor and additional member of the care committee. If I am not living and legally competent, successor and additional trustees, including the independent trustee and successor and additional members of the care committee may be appointed by Robert W. Munroe; otherwise, successor trustees and additional trustees including the independent trustee and successor and additional members of the care committee may be appointed as follows:

(i) by the remaining trustee or trustees, or, if none, by the resigning trustee; or,

(ii) if there is no remaining or resigning trustee, by a probate court of the Commonwealth of Massachusetts.

(c) James may not serve as trustee.

(d) A successor trustee need not be appointed if the independent trustee continues to serve.

(e) The appointment of any trustee shall be effective upon acceptance.

6.2. Removal or resignation of trustee.

(a) I may remove any trustee, including the independent trustee and members of the care committee, by written notice. However, I can only remove the independent trustee upon my obtaining the approval of a probate court of competent jurisdiction. The independent trustee shall continue to serve until there is a successor independent trustee serving. If I am not living and legally competent, Robert W. Monroe shall have the same power to remove a trustee, including the independent trustee. If he is not living and legally competent, Stacy Marie Avery Hanna shall have the same power to remove a trustee, including the independent trustee. If she is not living and legally competent, a guardian, conservator or attorney-in-fact for James shall have the same power to remove a trustee, including the independent trustee. If James is deemed by a court to be legally competent, James shall have the power to remove a trustee, including the independent trustee. No person shall possess or participate in this removal power if the power would be a general power of appointment with respect to that person for federal gift tax or estate tax purposes.

(b) A trustee, including the independent trustee, and members of the care committee may resign by giving thirty days' written notice to me, or, if I am not living and legally competent, to Robert W. Monroe, and if he is not living and legally competent to Stacy Marie Avery Hanna, or, if there are no persons so qualified, to the remaining or succeeding trustee, provided that the resignation of a sole remaining trustee shall become effective only upon the appointment and

acceptance of a successor trustee. However, the resignation of the independent trustee shall only be effective upon the appointment and acceptance of a successor independent trustee. If the independent trustee resigns, a successor independent trustee may be appointed without myself, Robert W. Monroe or Stacy Marie Avery Hanna, having to obtain court approval. In default of such appointment, the independent trustee may petition a probate court of competent jurisdiction to appoint their successor, sixty (60) days subsequent to their delivering their initial written notice of resignation. Costs associated with filing such a petition shall be paid by the trust.

(c) A trustee and members of the care committee shall cease to serve in the event of his or her incapacity. A trustee's incapacity shall be established by (i) a certificate signed by two licensed physicians and delivered to the trustee being removed and the remaining trustees or, if no trustee is then remaining, to the succeeding trustee, stating that the trustee is not capable of managing the financial affairs of the trust or (ii) the appointment of a guardian or conservator for the trustee.

6.3. <u>Independent trustee</u>.

At all times there shall be an independent trustee serving. At present, the independent trustee is Chris A. Milne. The independent trustee must approve any trust distributions exceeding $500 and any trust distributions exceeding annual cumulative distributions of $5,000. The independent trustee will review trust financial statements on a monthly basis to verify that the trust assets are being used in a manner consistent with the trust purpose as described in Section 2. An independent trustee is an individual or an institution, who is a bank or trust company, a professional trustee, investment banker, accountant or lawyer and who has no beneficial interest in the trust, and who is not related or subordinate to James, his parents, or his spouse, if any, or any of his children as defined in section 672(c) of the Internal Revenue Code of 1986, as amended.

6.4. <u>Investment Decisions</u>.

The trustee shall retain the services of one or more professional investment advisors to advise the trustee regarding investment decisions. The professional investment advisor shall be a Series 7 registered representative or a registered representative under state law, who is regularly engaged in the business of managing assets for others and who is employed by a financial institution with at least Five Hundred Million ($500,000,000.00) Dollars under active management. The trustee may at any time discharge the investment advisor. However, the financial advisor must be replaced with another financial institution which meets the requirements of this paragraph.

6.5. <u>Additional trustee provisions</u>.

(a) Each appointment, removal, resignation, acceptance, or notice under this section 6 shall be in writing and, without affecting the validity of any action, copies shall be given to all

the trustees. Any notice may be waived by the person to whom it is to be given.

(b) Each successor or additional trustee, including the independent trustee, whether or not named by me, shall have all the rights and powers of his or her predecessor, except as limited by this agreement or by law. The same title to the trust fund of a predecessor trustee shall vest in each successor or additional trustee by virtue of the trustee's appointment and acceptance without any further instrument of transfer or conveyance.

(c) Subject to paragraph 6.2, when there is a trustee vacancy, the remaining trustee or trustees shall act alone until the vacancy has been filled, unless disqualified from acting by this agreement or by law. During the absence or disability of any trustee, the remaining trustee or trustees, except where disqualified, may act alone subject to any limitations imposed in writing by the absent or disabled trustee.

(d) Anyone dealing with the trust property may rely on a writing signed by any trustee as to the trustee's authority to act on behalf of the trust.

6.6. General powers of trustee.

In addition to all common law and statutory authority, including but not limited to the Statutory Optional Fiduciary Powers provided in M.G.L. Ch. 184B, the trustee, including the independent trustee, except as otherwise provided, shall have power without approval of any court and in any manner it considers advisable:

(a) to retain any property in the form in which it is received from James, his estate, or any other source and to purchase or retain any residence for James;

(b) to repair, insure or otherwise care for any property and to pay any shipping or other expenses relating to the property as the trustee deems advisable;

(c) to abandon any property the trustee considers worthless;

(d) to make any improvements to any real or personal property;

(e) to invest income and principal without being subject to legal limitations on investments by fiduciaries and, without limiting the generality of the foregoing, to invest in investment company shares or in shares or undivided portions of any common trust fund;

(f) to buy, sell, convey, mortgage, exchange, assign, lease, including executing and delivering leases as landlord or tenant or otherwise dispose of or encumber including granting easements or acquiring rights or easements any real or personal property on any terms, no purchaser being bound to see to the application of any proceeds, and whether or not the effect thereof extends beyond the term of this trust;

(g) to keep securities or other property in the name of a nominee;

(h) to pay, compromise or contest claims or controversies involving the trust, including claims for taxes;

(i) to determine in accordance with reasonable accounting principals and practice and state law, what part of the trust property is income and what part is principal;

(j) to exercise all the rights that may be exercised by any security holder in an individual capacity and to delegate any such rights;

(k) to borrow any amounts with or without security;

(l) to allot in or towards satisfaction of any payment, distribution or division, pro rata or non-pro rata, any trust property in James' estate at the then current fair market value determined by the trustee;

(m) to hold trusts and shares undivided or at any time to hold the same or any of them separate; and

(n) to retain any investment counsel and advisors, accountants, depositories, custodians, brokers, attorneys and agents and to pay them the usual compensation for their services, to accept and act upon the recommendations of investment counsel and advisors, and to delegate to any investment counsel and advisors, custodians, brokers or agents retained by the trustee any ministerial or discretionary powers;

(o) to make distributions in cash or kind.

6.7. <u>Bonds and accounts</u>.

(a) No trustee shall be required to give bond, or, if a bond is required by law, no sureties on the bond shall be required.

(b) The independent trustee shall provide me with a monthly financial statement regarding all trust assets which includes: monthly beginning balance; monthly ending balance; a listing of all checks drawn on the account including payee and amount; deposits; and income earned. If I am not living and legally competent, the independent trustee shall continue to provide statements to Robert W. Monroe, and if he is not living and legally competent, to Stacy Marie Avery Hanna and if she is not living and legally competent, a guardian, conservator or attorney-in-fact for James. If James is deemed to be legally competent, the independent trustee shall also provide him with a copy of the monthly financial statements. The monthly financial statement shall serve as a written trust account for that month.

(c) Upon my written request, the independent trustee shall prepare a written annual account statement which will include all of the income and the distributions for all assets for that year. If I am not living and legally competent, Robert W. Munroe may request an annual account statement and if he is not living, Stacy Marie Avery Hanna may request an annual account statement. If James is deemed to be legally competent he may also request an annual account statement. The account shall reflect the expenses and income for all assets held by the independent trustee of the trust for that year. Subsequent to James' death, the independent trustee shall provide copies of the trust account statements reflecting the performance of trust investments to the trust beneficiaries.

(d) The independent trustee shall furnish an account to the state Medicaid office providing benefits to James within 120 days of receiving a written request from that office. Medicaid may request such accounts on an annual basis.

(e) Any account of the trustee assented to in writing by myself, or if I am not living and legally competent, by Robert W. Munroe and if he is not living and legally competent, by Stacy Marie Avery Hanna or after James' death, by trust beneficiaries, shall be conclusive, except for fraud or manifest error, on all parties in interest, whether or not of full age or in being or ascertained. Nothing in this paragraph shall be construed to give anyone the power or right to enlarge or shift the beneficial interest of any beneficiary. If a person whose assent would be required if legally competent is under guardianship or conservatorship, the guardian or conservator may act in behalf of the person and the guardian's or conservator's assent shall be required. The failure of any person or agency to object to any account or financial statement by a writing mailed to the independent trustee within ninety days after the mailing of a copy of the account to that person or agency shall be conclusively deemed an assent by that person or agency, except for fraud or manifest error. The independent trustee may present any trust accounts for allowance to a court of competent jurisdiction, and no guardian ad litem shall be appointed in that proceeding.

6.8. Delegation among trustees.

Any trustee may delegate to any other trustee acting under this instrument, if any, the power to exercise any or all powers granted the trustee in this agreement, including those that are discretionary except as specifically delegated to the independent trustee. The trustee may revoke any such delegation at will. The delegation of any such power, as well as the revocation of any such delegation, shall be evidenced by an instrument in writing executed by the delegating trustee. So long as any delegation is in effect, any of the delegated powers may be exercised by the trustee receiving such delegation with the same force and effect as if the delegating trustee had personally joined in the exercise of such power.

Trustees may only delegate additional powers and duties to the independent trustee with the written approval of the independent trustee.

6.9. Fees for the trustee and care committee.

The trustee, including the independent trustee and care committee shall be entitled to fair and reasonable compensation for the services the trustee renders a beneficiary or the trust. The amount of compensation shall be an amount equal to the customary and prevailing charges for services of a similar nature during the same period of time and in the same geographic locale. The trustee shall be reimbursed for the reasonable costs and expenses incurred in connection with the trustee's fiduciary duties performed under this agreement.

6.10. Majority required for control.

The concurrence and joinder of a majority of the trustees, if more than one trustee is acting, shall control in all matters pertaining to the administration of the trust created under this agreement, except as specifically delegated to the independent trustee. If only two trustees are acting, the concurrence and joinder of both shall be required. When more than two trustees are acting, any dissenting or abstaining trustee may be absolved from personal liability by registering a dissent or abstention with the records of the trust; the dissenting trustee shall thereafter act with the other trustees in any manner necessary or appropriate to effectuate the decision of the majority.

6.11. Adequate consideration.

Notwithstanding the provisions of paragraph 6.6, none of the powers accorded to the trustee shall be construed to enable the trustee or any other person to purchase, exchange, or otherwise deal with or dispose of the principal or income of this trust for less than adequate or full consideration in money or money's worth, or to enable the grantor or the trustee to borrow the principal of this trust, directly or indirectly, without adequate interest or security.

6.12. Real property and environmental matters.

The trustee, including the independent trustee shall have the following rights and powers with regard to real property, operating businesses, and environmental matters:

(a) The right to inspect all real property and business trust assets and to require the trust to pay reasonable costs of determining the existence and nature of any real or potential hazardous wastes on or in such real property prior to accepting the role and responsibility of trustee hereunder.

(b) As trustee, the right and power to inspect all real property trust assets and to take all and any reasonable steps, at trust expense, to prevent, stop, or abate any actions or conditions that constitute or may constitute violations of any environmental legislation or regulation.

The trustee shall also be held harmless and indemnified with regard to any claims that

may arise with regard to real property or business trust assets, regardless of when allegedly violative actions were taken with regard to such real property and regardless of by whom such actions were taken. The trustee shall similarly be held harmless and indemnified for any liability or costs or expenses that may arise from hazardous waste and other environmental legislation or litigation. It is the grantor's intent and direction that the trustee suffer no personal financial exposure or risk on account of such environmental issues while serving as trustee.

6.13. Trustee liability.

No trustee, including the independent trustee, or any member of the care committee shall be held personally liable by reason of any action taken, suffered or omitted in good faith. Each additional or successor trustee, including the independent trustee, and members of the care committee shall not be liable for any acts or omissions of any individual or institution prior to the time he or she was appointed.

## 7. BENEFICIARIES' INTEREST AND POWERS

7.1. Interests of beneficiaries not to be alienated.

The interest of any beneficiary under this agreement shall not be subject to assignment, alienation, pledge, attachment, or claims of creditors.

7.2. Disclaimers.

In addition to any power to disclaim conferred by law, any beneficiary (including the executor or administrator of a beneficiary's estate) may disclaim in whole or in part any power or interest granted to the beneficiary under this agreement. If a beneficiary disclaims any interest before having received any benefits of the interest, then the property subject to the interest shall pass as if the beneficiary had died before becoming entitled to it. If a beneficiary releases any interest after having received any benefits of the interest, then the property subject to the interest shall pass as if the beneficiary had then died.

7.3. Payments for beneficiaries.

(a) Income payable to a person and income or principal that in the discretion of the trustee may be paid to a person may be used by the trustee for the person's benefit whether or not that person is legally competent or under conservatorship or guardianship.

(b) Payments of any amount to be made to a minor may be made to a custodian for the minor under the Uniform Transfers to Minors Act or any similar statute or such payments may be made to either of his or her parents or to any person having custody of the minor.

(c) If property becomes payable to the estate of any person and the trustee believes there is no duly appointed fiduciary and that none is contemplated, the trustee may, upon being furnished suitable indemnity, make payment to the persons who the trustee believes are entitled to the payment, without liability to see to the application of the payment.

7.4. Power of Appointment.

Any power of appointment by will granted under this agreement can be exercised only by will by specific reference to this agreement and the power to be exercised and shall include the right to appoint all or part of the property subject to the power, to appoint outright, to give to the appointee or appointees different types of interests and general or limited powers of appointment, to appoint in trust and create separate trusts, to appoint a new trustee or trustees, and to give a trustee or trustees discretion to pay or apply income and principal within the class of permissible appointees.

## 8. DEFINITIONS AND CONSTRUCTION

8.1. Income.

Income means net income and accumulated income not added to principal. Income received during the period of administration of James' estate shall be treated as income by the trustee if it would have been so treated had it been received directly by the trustee. Undistributed income at the termination of the income interest to which it relates shall be dealt with as if accrued and received thereafter.

8.2. Distributions per stirpes.

Where distribution of income or principal is to be made to a person's issue per stirpes, the person's children, whether or not living at the time of the distribution, shall be treated as the original stocks, and a further subdivision shall be made at each succeeding generation.

8.3. Adopted children.

The words "child" and "issue" and the like include persons adopted in their minority and persons tracing descent through one or more such adopted persons in all respects as if descended by blood and include persons descended by blood, unless adopted while under the age of one year old by someone other than a step-parent, grandparent, aunt or uncle, or guardian named by the adopted person's natural parent.

8.4. Survival.

Where it is required by this agreement that any person shall have survived another, that requirement means that the person shall have survived the other person by at least thirty days.

8.5. Rule against perpetuities.

Regardless of any other provisions contained in this agreement, all trusts under this agreement shall terminate no later than twenty-one years after the death of James.

8.6. Governing law and construction.

This agreement shall be construed, governed, and administered in accordance with Massachusetts law. The headings of the paragraphs of this agreement are inserted for convenience only and shall not affect its construction. In the construction of this agreement the gender of pronouns and the singular or plural form of words shall be disregarded where appropriate. References to provisions of the Internal Revenue Code shall be deemed to include any corresponding provisions of subsequent federal tax laws.

8.7. Tax liability.

It is the intent of the grantor that this trust be construed as a "grantor trust" under Internal Revenue Code Section 677(a) and that for tax purposes James be considered the grantor. All income distributed, held, or accumulated by this trust shall be taxable to the grantor. The trustee may distribute to the grantor such amounts of income or principal of the trust as the trustee deems necessary to satisfy the grantor's tax obligation, to the extent that the income of the trust generates a tax liability for the grantor.

8.8. Effective date.

This instrument shall take effect when signed by me and any trustee.

Executed under seal this _____ day of December, 2005.

______________________________
Kimberly M. Hanna, Donor and Trustee

______________________________
Chris A. Milne, Independent Trustee

COMMONWEALTH OF MASSACHUSETTS

____________, ss.

On this _____ day of December, 2005, before me personally appeared Kimberly M. Hanna, Donor and Trustee, to me known to be the person described in and who executed the foregoing trust, and acknowledged that she executed the same as her free act and deed.

______________________________
Notary Public
My commission expires:

K:\Avery\(d)(4)(A) trust-7-18-05-draft.wpd

# SCHEDULE A

# SCHEDULE B